**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 31 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LAURO G. GUADERRAMA;
GAYLE W. GUADERRAMA,

        Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE,

        Respondent-Appellee.

No. 00-9035
(Tax Court No. 16255-97)

**ORDER AND JUDGMENT** *

Before **TACHA** , Chief Judge, **BALDOCK** , Circuit Judge, and **BRORBY** , Senior Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I. Background

We have jurisdiction pursuant to 26 U.S.C. § 7482. The facts found by the

Tax Court can be summarized as follows.

Steven Benavidez's bar burned down in 1989. Mr. Benavidez decided to

build a new restaurant/bar at a different location, and purchased a $35,000 tract of

land for this purpose, placing $10,000 down. He was unable to obtain a loan to

finance this project, however, because the banks he approached refused to accept

his only asset, a New Mexico liquor license, as collateral. Because of his

inability to secure a bank loan, Mr. Benavidez entered into negotiations with

Lauro and Gayle Guaderrama, and the parties reached a number of agreements.

Mr. Benavidez deeded the property to the Guaderramas [1] and the

Guaderramas paid off the $25,000 balance owed on the property. The

Guaderramas contracted and paid for the construction of the building that was to

house the restaurant/bar and also purchased furniture for the establishment. In

exchange, Mr. Benavidez sold his liquor license, which had an estimated value of

$100,000 to $200,000, to the Guaderramas for only $10. Mr. Benavidez also

---

[1]     Some aspects of these agreements were conducted through L&G
Investments, a corporation formed by Mr. Guaderrama. The Tax Court
determined that this corporation had no independent economic existence. This
finding is not contested; therefore, for the sake of clarity, references to the
Guaderramas will implicitly include transactions conducted through L&G
Investments.

agreed to make monthly lease payments to the Guaderramas for the next fifteen years.  The amount of the payments equaled the sum of the Guaderramas' expenditures (the $25,000 payment on the property, the cost of constructing the building, and the cost of the furniture) amortized at an interest rate of 15%.  The lease also provided that, after ten years, Mr. Benavidez had the option to purchase the property for 125% of the balance of his lease payments.

Under the lease agreement, Mr. Benavidez bore all the costs, expenses and obligations of operating the restaurant/bar, and any benefits of operation (i.e., profits or appreciation of the property) accrued to him.  By contrast, the Guaderramas were indemnified against any expense by Mr. Benavidez, and were immune to liability for any damage occurring in connection with the property.  Even if the restaurant/bar were partially or fully destroyed, the Guaderramas would still receive lease payments from Mr. Benavidez.

Mr. Benavidez and the Guaderramas reported the transaction inconsistently on their respective tax returns, and the Commissioner issued deficiency notices to both parties, spurring the instant action.  On their face, the agreements entered into by Mr. Benavidez and the Guaderramas referred to their arrangement as a lease, and at trial the Guaderramas contended that this accurately reflected the nature of the transaction.  Mr. Benavidez and the Commissioner, by contrast, asserted that, regardless of the form of the transaction, in substance it was a

financing arrangement. In its memorandum opinion,[2] the Tax Court carefully examined the characteristics of the transaction, including the following: Mr. Benavidez provided collateral to the Guaderramas; the lease payments correlated to a fixed interest rate on a certain sum of money, not to the value of the property; and the risks, responsibilities, and benefits of ownership fell to Mr. Benavidez, not the Guaderramas. Based on these considerations, the Tax Court determined that the transaction was a financing arrangement rather than a lease, and imposed an adjusted tax liability on the Guaderramas as a result.

On appeal, the Guaderramas do not take issue with the Tax Court's factual findings regarding the features of the transaction, but contend that (1) the court erred by looking beyond the form of the transaction to its substance in determining the tax consequences of the agreements and (2) even if the court was permitted to examine the substance of the transaction, the court erred in concluding that the parties intended a financing arrangement rather than a lease.[3]

We affirm the decision of the Tax Court.

---

[2] Neither party attached to their brief a copy of the Tax Court's memorandum opinion as required by 10th Circuit Rule 28.2(A)(1). While the decision appealed here is a brief order entered November 21, 2000, the Tax Court's analysis and reasoning is laid out in its memorandum opinion of March 28, 2000, and it is this document that the appellate panel requires for effective review.

[3] The Guaderramas present only the first of these arguments as an issue on appeal; however, both arguments are set forth in the body of their brief.

## II. Standard of Proof

In their petition for review, the Guaderramas first contend that the Tax Court erred in allowing the Commissioner to look beyond the form of the agreement elected by the parties and instead assess tax liability based on the substance of that agreement. [4] Specifically, the Guaderramas argue that the Tax Court should have applied either the *Danielson* rule or the "strong proof" rule to prevent the Commissioner from construing the transaction independently of the form given to it by the parties. Whether the Tax Court applied the correct legal standard is a question of law that we review de novo. *See LDL Research & Dev. II, Ltd. v. Comm'r*, 124 F.3d 1338, 1342 (10th Cir. 1997).

The *Danielson* rule prevents a taxpayer from challenging the form of an agreement unless the taxpayer can adduce evidence that would be admissible to alter or invalidate the agreement in an action between the parties to the agreement *See Comm'r v. Danielson*, 378 F.2d 771, 775 (3d Cir. 1967). The "strong proof" rule similarly prevents a taxpayer from disavowing the form of an agreement in the absence of "strong proof" that the parties intended a different arrangement.

---

[4] The Guaderramas also argue that the Commissioner bore a heavier burden of proof because he raised a new issue at trial. The Commissioner asserts that the Guaderramas make this argument for the first time on appeal, and because the Guaderramas have neither provided a record citation indicating where this issue was preserved nor filed a Reply Brief contesting the Commissioner's assertion, the argument is deemed waived. *See* 10th Cir. R. 28.2(C)(2) (requiring parties to identify where issues on appeal were raised and ruled upon).

*See Kreider v. Comm'r*, 762 F.2d 580, 586 (7th Cir. 1985) (taxpayer seeking to attack form of agreement must present "strong proof" showing that intent of parties was other than that expressed in agreement); *Hamlin's Trust v. Comm'r*, 209 F.2d 761, 765 (10th Cir. 1954) (parties transacting at arm's length cannot later attempt to avoid tax consequences by claiming that substance of transaction differed from form). The Tenth Circuit has declined to adopt the more restrictive *Danielson* rule; therefore, when an appeal would lie in this circuit, the Tax Court applies the less stringent "strong proof" rule. [5]

Though formulated differently, each of these rules limits a taxpayer's ability to alter the tax consequences of a transaction by arguing that the parties to an agreement intended something different than what they expressed in the agreement. Neither rule constrains the Commissioner's position on a taxpayer transaction. In fact, the *Danielson* decision that the Guaderramas urge us to

---

[5] *See, e.g., Hoffman v. Comm'r*, T.C.M. (RIA) 2001-109 (2001) ("strong proof" rule applies where circuit has not adopted *Danielson* rule). *Danielson* has been cited by the Tenth Circuit only in passing in a single unpublished order and judgment and in two published decisions, *Barton Theatre Co. v. Comm'r*, 701 F.2d 126, 127 (10th Cir. 1983), and *Atchison, Topeka & Santa Fe R.R. v. United States*, 443 F.2d 147, 152 (10th Cir. 1971). In light of this fact, the Tax Court correctly concluded that it could not apply the *Danielson* rule. *See Golsen v. Comm'r*, 54 T.C. 742, 756-57 (1970) (Tax Court bound by law of circuit in which appeal would lie), *aff'd*, 445 F.2d 985 (10th Cir.), *cert. denied*, 404 U.S. 940 (1971).

follow clearly articulates the distinction between a challenge to the form of an agreement mounted by a taxpayer and one mounted by the Commissioner.

> [T]o permit a party to an agreement . . . to attack that provision for tax purposes, absent proof of the type which would negate it in an action between the parties, would be in effect to grant, at the insistence of a party, a unilateral reformation of the contract . . . . If allowed, such an attack would encourage parties unjustifiably to risk litigation after consummation of a transaction in order to avoid the tax consequences of their agreements.

*Danielson*, 378 F.2d at 775. By contrast,

> Where the Commissioner attacks the formal agreement the Court involved is required to examine the 'substance' and not merely the 'form' of the transaction. This is so for the very good reason that the legitimate operation of the tax laws is not to be frustrated by forced adherence to the mere form in which the parties may choose to reflect their transaction. . . . [T]o allow the Commissioner alone to pierce formal arrangements does not involve any disparity of treatment because taxpayers have it within their own control to choose in the first place whatever arrangements they care to make.

*Id.* at 774. It is in fact well established that "the government may look at the realities of a transaction and determine its tax consequences despite the form or fiction with which it was clothed." *Hamlin's Trust*, 209 F.2d at 764. Thus, whether a court follows the *Danielson* rule or the "strong proof" rule, the reasoning quoted above bars application of the restriction to the Commissioner. The Guaderramas' argument that the Commissioner is bound by the parties' construction of their transaction is without merit.

### III. Characterization of the Transaction

Next, the Guaderramas contend that, even if the Tax Court is permitted to examine the substance of the transaction, it erred in concluding that the transaction was not a bona fide lease. While the Tax Court's factual findings on this issue will stand unless the Guaderramas can demonstrate clear error,[6] "[t]he general characterization of a transaction for tax purposes is a question of law." *Frank Lyon Co. v. United States*, 435 U.S. 561, 581 n.16 (1978).

The Guaderramas' arguments on this point are assertions unsupported by authority. The Guaderramas cite cases in which a court concluded that a lease was genuine, but they fail to point to any factual parallels that would mandate reaching the same conclusion in the instant case. Conversely, the Guaderramas assert that this case is distinguishable from decisions concluding that a purported lease is in fact a financing agreement, but do not elaborate on or support this assertion. In fact, the cases the Guaderramas claim are similar have marked distinctions from this case, *see, e.g., Frank Lyon Co.*, 435 U.S. at 577 (lease was genuine where lessor who was liable to bank for mortgage bore real, substantial risk), while the proper analogues are found in those cases they claim are distinguishable. *See, e.g., Sun Oil Co. v. Comm'r*, 562 F.2d 258, 269 (3d Cir.

---

[6] The Guaderramas have not taken issue with any particular findings of the Tax Court, and we conclude that the court's findings are supported by the record.

1977) (purported lease was in fact financing arrangement where lessor was insulated from all risks and was guaranteed a particular rate of return, while lessee bore all risks and accrued equity interest in property through lease payments).

The arrangement entered into by Mr. Benavidez and the Guaderramas bears many similarities to the transaction analyzed in the *Sun Oil* decision, and the Tax Court was correct to apply a similar analysis to reach a similar conclusion: that the transaction at issue failed to effect an actual transfer of ownership interests to the lessor; rather, the purported lessor in essence served the role of lender. In determining the nature of the transaction, the Tax Court carefully examined a number of factors, including whether the purchase option would convey the property at its fair market value; which party bore the risks and responsibilities of ownership; and the terms of the lease payments. The Tax Court properly concluded that the salient features of the transaction marked it as a financing arrangement rather than a lease.

## IV. Conclusion

The decision of the Tax Court is AFFIRMED.

Entered for the Court

Wade Brorby
Senior Circuit Judge