T.C. Summary Opinion 2008-107


UNITED STATES TAX COURT


MARK A. AND JULIE R. DOYLE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17259-07S.               Filed August 21, 2008.


Mark A. and Julie R. Doyle, pro sese.

<u>John C. Schmittdiel</u>, for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code (Code) in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Code in effect for the

years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies of $2,046 and $608 in petitioners' 2003 and 2004 Federal income taxes, respectively. Respondent also determined accuracy-related penalties under section 6662(a) of $409.20 and $121.60 for 2003 and 2004, respectively.

After concessions by petitioners,[1] the issues remaining for decision are whether petitioners are: (1) Entitled to claim deductions for interest, depreciation, and certain expenditures with respect to their "leasing activity and/or trucking business"; and (2) liable for the accuracy-related penalty for each year.

### Background

Petitioners did not appear in person or by counsel at trial. The case was submitted on a stipulation of facts and a supplemental stipulation of facts. Petitioners executed both stipulations. The stipulated facts, together with the exhibits attached thereto, are incorporated herein by reference. When the petition was filed, petitioners resided in North Dakota.

---

[1]Petitioners claimed investment interest expense deductions of $6,926 and $4,077 for 2003 and 2004, respectively. They concede that the deductions were not proper. Mrs. Doyle received $10,025 in premature distributions from a qualified retirement plan during 2003; petitioners concede that they are liable for a 10-percent additional tax of $1,003 on the distributions.

On September 25, 2002, Mr. Doyle purchased a "1993 Kenworth T600 Truck" for $11,000 from "The Load Line". On October 1, 2002, Citizens State Bank lent Mr. Doyle the funds to acquire the truck. The terms of the promissory note provided that Mr. Doyle was to pay the bank the principal amount of $12,025 plus interest at the rate of 8 percent per annum on the unpaid principal balance from October 1, 2002, until paid in full. He was to make seven payments of $1,643.58 and an estimated final payment of $1,643.58. He was to make the loan payments on the first day of each quarter starting January 1, 2003. Petitioners paid $3,921.22 on the note during 2003.[2]

Contemporaneously, Mr. Doyle entered into a purported lease agreement with WSB Trucking, Inc. (WSB), that is in effect a promissory note. The president of WSB, William S. Brown,[3] signed the lease agreement on behalf of WSB. The lease provided that WSB was to pay Mr. Doyle the principal amount of $12,000 plus interest at the rate of 8 percent per annum on the unpaid principal balance from October 1, 2002, until paid in full. WSB was to make eight payments of $1,643.58 and an estimated final payment of $1,643.58. WSB was to make loan payments on the first

---

[2]It is not clear from the record whether petitioners paid anything on the note in 2004.

[3]Respondent represents that Mr. Brown is Mrs. Doyle's father.

day of each quarter starting January 1, 2003.  Mr. Doyle received a $1,643.58 payment in 2003 via a check drawn on an account of WSB.  On November 12, 2003, a $1,650 deposit was made to petitioners' personal bank account; a notation made upon the deposit ticket indicates that WSB was the source of the deposit.

On January 13, 2003, petitioners registered the truck in their name as an interstate carrier with the North Dakota Department of Transportation.

Petitioners filed joint Forms 1040, U.S. Individual Income Tax Return, for 2003 and 2004.  Petitioners claimed refunds of $946.27 and $587.47 for 2003 and 2004, respectively.  Neither Form 1040 included a Schedule C, Profit or Loss From Business, for petitioners' "leasing activity and/or trucking business".

During the examination of petitioners' returns, petitioners submitted Forms 1040X, Amended U.S. Individual Income Tax Return, on April 20, 2006, which included Schedules C for their "leasing activity and/or trucking business" for 2003 and 2004.  The 2003 Schedule C listed gross receipts of $1,643.58 and car and truck expenses of $21,600, for a net loss of $19,956.42.  The 2004 Schedule C listed gross receipts of $1,632.66 and car and truck expenses of $16,125, for a net loss of $14,492.34.  Petitioners claimed refunds of $2,992.40 and $2,175.34 for 2003 and 2004, respectively.  One year later, on April 25, 2007, respondent issued the notice of deficiency denying petitioners' Schedule C

deductions (and resulting loss) because petitioners did not establish that: (1) The activity constituted "a bona fide business venture entered into for profit"; (2) they paid or incurred the expenses; (3) the expenses were paid for ordinary or necessary business purposes; or (4) the expenses qualify as allowable deductions under the Code.

On July 18, 2007, petitioners submitted Forms 1040X that included amended Schedules C for their "leasing activity and/or trucking business" for 2003 and 2004. For 2003 petitioners removed the $21,600 in car and truck expenses and claimed a $2,300 depreciation deduction, a $2,370 deduction for paid mortgage interest, a $7,893 deduction for repairs and maintenance,[4] and a $525 deduction for taxes and licenses. Petitioners' total expenses of $13,088 offset the $1,644 of reported gross receipts for an $11,144 loss for 2003. For 2004 petitioners removed the $16,125 in car and truck expenses and claimed a $3,680 depreciation deduction and a $1,892 deduction for paid mortgage interest. Petitioners' total expenses of $5,572 offset the $1,632 of reported gross receipts for a $3,940

_____

[4]Although petitioners raised the repairs and maintenance issue in their petition, they did not continue to assert their entitlement to the deduction in their pretrial memorandum or at trial. The issue is deemed abandoned, and they have in effect conceded that the claimed deduction was not proper. See Leahy v. Commissioner, 87 T.C. 56, 73-74 (1986).

loss for 2004. Petitioners reported $328 as the "amount you owe" for 2003 and claimed a $158 refund for 2004.

## Discussion

### I. Burden of Proof

In general the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden to prove that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). But the burden of proof on factual issues that affect a taxpayer's tax liability may be shifted to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue." Sec. 7491(a)(1). Petitioners have not met the requirements of section 7491(a)(2) to shift the burden of proof to respondent. See sec. 7491(a)(1) and (2); Rule 142(a).

### II. Petitioners' Leasing Activity and/or Trucking Business

Respondent asserts that the lease agreement is in fact a loan, and petitioners bought the truck merely to accommodate Mr. Brown, "who apparently didn't have sufficient credit to obtain it". Thus, "we don't think a loss is well-founded."

Petitioners contend that they entered into "a for profit venture" involving "over the road hauling". It "did not produce as expected [because the truck needed major repairs] which provided insufficient income to WSB * * * and partial lease payments to us, who operate in a non-corporate format as sole

proprietors." Petitioners claim that they had an active role as "owners/operators assisting in scheduling loads, [setting up maintenance and repair services, and obtaining funding for] certain operational expenditures."

Petitioners' evidence consisted of the sales order for the truck, the promissory note, the lease agreement with WSB, a copy of the check received from WSB, a letter from North Star Community Credit Union, referencing certain interest and late fee payments, and a letter from Workforce Safety & Insurance (WSI). The WSI letter states that WSI had received a wire transfer from Mrs. Doyle, which "satisfied your personal liability for workers compensation premiums for WSB Trucking, Inc." Additionally, petitioners provided documentation substantiating the following expenditures:

| Year | Expense | Amount |
|------|---------|--------|
| 2003 | Certificate of title/registration | $599.59 |
| 2003 | License plate fee | 5.00 |
| 2003 | Interest | 2,278.35 |
| 2003 | Late fees | 60.00 |
| 2004 | Interest | 1,054.61 |
| 2004 | Late fees | 60.00 |
| 2004 | Workers compensation premium | 3,959.40 |

Petitioners have not carried their burden to show that they, as opposed to WSB, were engaged in any "trucking activity" for 2003 and 2004.

The terms of the lease agreement between Mr. Doyle and WSB were nearly identical to the terms of the promissory note that

Mr. Doyle executed in favor of Citizens State Bank.  In addition, WSB (and Mr. and Mrs. Brown) had filed a chapter 12 bankruptcy petition in February 1999, which was dismissed in July 2000 at the debtors' request.  See Farmpro Servs., Inc. v. Brown, 273 Bankr. 194, 195 (Bankr. 8th Cir. 2002).[5]  The Court surmises that WSB (and/or Mr. Brown) would not have been able to acquire credit on such terms from an unrelated party in view of the bankruptcy filing.  See Hall Paving Co. v. United States, 33 AFTR 2d 74-1192, at 74-1199, 74-1 USTC par. 9397, at 83,976 (N.D. Ga. 1974) ("the economic reality of a purported debt can be judged by whether an unrelated party would have extended credit in the circumstances.").  The Court finds, on the basis of all of the facts and circumstances, that the lease agreement was in fact a financing arrangement and that petitioners served only as conduits to pass funds between the bank and WSB.  See Frank Lyon Co. v. United States, 435 U.S. 561, 573 (1978); Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 255 (1939) ("the courts * * * are concerned with substance and realities, and formal written documents are not rigidly binding"); Coulter Elecs., Inc. v. Commissioner, T.C. Memo. 1990-186 (the documents' terms and the parties' conduct were indicative of a loan relationship rather than a sale), affd. without published opinion 943 F.2d 1318 (11th

_____

[5]The Court takes judicial notice of the bankruptcy court's opinion.  See Fed. R. Evid. 201.

Cir. 1991). Accordingly, petitioners have not received any income, nor are they entitled to claim any deductions on account of the financing arrangement. See <u>Ill. Power Co. v. Commissioner</u>, 87 T.C. 1417 (1986); <u>Guaderrama v. Commissioner</u>, T.C. Memo. 2000-104, affd. 21 Fed. Appx. 858 (10th Cir. 2001). Respondent's determination is sustained.

III. <u>Accuracy-Related Penalty</u>

Initially, the Commissioner has the burden of production with respect to any penalty, addition to tax, or additional amount. Sec. 7491(c). He satisfies this burden of production by coming "forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty." <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). Once the Commissioner satisfies this burden of production, the taxpayer must persuade the Court that the Commissioner's determination is in error by supplying sufficient evidence of reasonable cause, substantial authority, or a similar provision. <u>Id.</u>

In pertinent part, section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty equal to 20 percent of the underpayment that is attributable to negligence or disregard of rules or regulations or a substantial understatement of income tax.[6] "Negligence" is defined to include "any failure to make a

[6]Because the Court finds for respondent on the negligence ground, the Court need not discuss the substantial understatement
(continued...)

reasonable attempt to comply with the provisions of this title", and "disregard" is defined to include "any careless, reckless, or intentional disregard." See sec. 6662(c). Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. See sec. 1.6662-3(b)(1), Income Tax Regs.

In interpreting section 6662, the Court has defined the term "negligence" as a "'lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (and cases cited thereat), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).

Section 6664(c)(1) provides an exception to the section 6662(a) penalty: no penalty is imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause therefor and the taxpayer acted in good faith. Section 1.6664-4(b)(1), Income Tax Regs., incorporates a facts and circumstances test to determine whether the taxpayer acted with reasonable cause and in good faith. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability. Id. Circumstances that may indicate reasonable cause and good faith include an honest

---

⁶(...continued)
of income tax ground.

misunderstanding of fact or law that is reasonable in view of the taxpayer's experience, knowledge, and education.  <u>Id.</u>

Petitioners have conceded that they improperly accounted for the distributions with respect to Mrs. Doyle's qualified retirement plan and that they claimed improper deductions.  In addition, petitioners were not entitled to deduct the expenditures paid or incurred in their so-called leasing activity and/or trucking business.  They did not establish reasonable cause or any defense for their noncompliance with the Code's requirements.  The Court finds that respondent has met his burden of production and that petitioners were negligent.  See <u>Fairey v. Commissioner</u>, T.C. Memo. 2005-129.  Accordingly, respondent's determination is sustained.

Other arguments made by the parties and not discussed herein were considered and rejected as irrelevant, without merit, and/or moot.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.